No. 99-621

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 302N

STATE OF MONTANA,

        Plaintiff and Respondent,

  v.

BRUCE KENNETH BRIGGS,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone, Cause No. DC 97-615
The Honorable G. Todd Baugh, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

            Gary E. Wilcox, Attorney at Law, Billings, Montana

        For Respondent:

            Honorable Mike McGrath, Montana Attorney General, Jennifer Anders, Assistant Montana Attorney General, Helena, Montana; Dennis Paxinos, Yellowstone County Attorney, Beverly G. Tronrud, Deputy County Attorney, Billings, Montana

Submitted on Briefs:  February 6, 2003

Decided:   November 4, 2003

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent.  It shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2     In September 1999, Bruce Kenneth Briggs (Briggs) was adjudged guilty of Driving While Under the Influence.  He appeals the judgment on various grounds. We affirm.

## ISSUES

¶3     Briggs presents the following issues on appeal:

1.     Was he denied his right to a speedy trial in district court?

2.     Did the District Court err in denying his motion to suppress?

3.     Was sufficient evidence presented to justify his conviction?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4     On November 18, 1996, Briggs and his girlfriend, Melinda Sperry, Wyoming residents, drove to Billings from Worland, Wyoming, to meet Jerry Dewey, a mutual friend. The three went to dinner.  Sperry and Dewey both testified that the three of them split a bottle of wine over the course of their meal.  Following dinner, Briggs drove them to a local Billings bar to watch some football.  Sperry testified that while at the bar, she drank two

2

mixed drinks and the men drank beer. She speculated that they each drank two beers but admitted to "not really" knowing how much they drank at that time. After spending an unestablished amount of time at the bar, the three left. Once again Briggs drove. The weather was cold and an icy rain was falling. Shortly after leaving the bar, Briggs lost control of his vehicle and struck an oncoming car driven by Christina Crenshaw. No one was injured in the accident.

¶5 A passerby called the police and Highway Patrol Officer Craig Baum was dispatched to the scene. Prior to Baum's arrival, Briggs told Crenshaw that the accident was "totally his fault." He later repeated this admission to Officer Baum. Crenshaw testified that she did not notice anything that would lead her to believe that Briggs was intoxicated but that she had not gotten very close to him.

¶6 When Baum first arrived on the scene and spoke to Briggs, he noticed Briggs' eyes were bloodshot and he could detect a "slight" odor of alcohol. Therefore, he requested that Briggs remain in his vehicle while he interviewed Crenshaw. He had to repeat this request a few times because Briggs kept getting out of his truck. Upon completion of Crenshaw's interview, Baum conducted Briggs' interview from inside the patrol car. In the closed quarters of the vehicle, Baum testified that there was a "strong" odor of alcohol emanating from Briggs.

¶7 Baum administered a field horizontal gaze nystagmus (HGN) test and a preliminary breath test (PBT). Briggs scored a six out of a possible six on his HGN indicating

impairment. His PBT also indicated impairment. As a result, Baum arrested Briggs for DUI. Baum then spoke with both Sperry and Dewey to determine if either could drive Briggs' truck. Baum testified that Dewey was visibly intoxicated but Sperry "passed" an HGN test and was allowed to drive. Baum then transported Briggs to the Yellowstone County Detention Facility (YCDF) where he administered and video taped further sobriety tests.

¶8    At the YCDF, Briggs again scored six out of a possible six clues on the HGN test, indicating a 75% chance that his blood alcohol content was .10 or greater. On the walk and turn test, he scored 2 clues out of a possible 8, which Baum testified indicated was 68% reliable for showing intoxication. On the one-leg stand, Briggs scored a one out of four but was unable to count to thirty within thirty seconds. The combined scores on the HGN and the walk and turn indicated intoxication. Lastly, a breath test was administered and showed a blood-alcohol level of .133.

¶9    Briggs' case was assigned to Justice Court where Briggs' attorney at the time filed a motion to suppress the results of the breath test. The court granted the motion on July 10, 1997, and continued the trial date in order to allow the State to appeal this ruling to District Court. The parties filed pretrial motions in District Court and on December 4, 1997, the District Court denied the same motion to suppress that the Justice Court had granted.

¶10    At Briggs' bench trial on March 4, 1998, Briggs was found guilty of DUI and ordered to serve one day under house arrest; to pay a $500 fine; to complete an alcohol information course; and to pay various court costs. Briggs filed a timely appeal.

4

**STANDARD OF REVIEW**

¶11    The standard of review for the denial of a motion to suppress is whether the trial court's findings of fact are clearly erroneous, and whether those findings were correctly applied as a matter of law. We review a district court's conclusions of law to determine whether they are correct. *State v. Vonbergen*, 2003 MT 265, ¶ 7, 317 Mont. 445, ¶ 7, 77 P.3d 537, ¶ 7 (internal citations omitted).

¶12    We review the sufficiency of the evidence to support a conviction by determining whether, when the evidence is viewed in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Bay*, 2003 MT 224, ¶ 10, 317 Mont. 181, ¶ 10, 75 P.3d 1265, ¶ 10 (citation omitted).

**DISCUSSION**

¶13    Briggs first argues that § 46-13-401(2), MCA, requires that his case be dismissed because his trial did not commence within six months after the criminal complaint was filed with the District Court, and that the delays were not the result of his motion or motions. Section 46-13-401(2), MCA, states:

> After the entry of a plea upon a misdemeanor charge, the court, unless good cause to the contrary is shown, shall order the prosecution to be dismissed, with prejudice, if a defendant whose trial has not been postponed upon the defendant's motion is not brought to trial within 6 months.

¶14    Briggs concedes that this Court has ruled on numerous occasions that the above-referenced statute does not apply to trials *de novo* on appeal from justice court. *See State v.*

5

*Stanko*, 1998 MT 323, ¶ 25, 292 Mont. 214, ¶ 25, 974 P.2d 1139, ¶ 25; *State v. Romero* (1996), 279 Mont. 58, 929 P.2d 717; *State v. Tweedy* (1996), 277 Mont. 313, 922 P.2d 1134. Our rationale for not applying this statute to trials *de novo* from justice court is sufficiently set forth in these cases and will not be repeated here. Therefore, we decline Briggs' invitation to revisit this issue or to adopt his proposed interpretation of this statute which would require dismissal of his action. Moreover, Briggs concedes that he did not raise this issue at the District Court and that this Court has ruled previously that a party may not raise an issue for the first time on appeal. *Griffin v. State*, 2003 MT 267, ¶ 15, 317 Mont. 457, ¶ 15, 77 P.3d 545, ¶ 15.

¶15 Next, Briggs maintains that the District Court erred in denying his motion to suppress the results of the breath test which he consented to take. He claims that, as a Wyoming resident, he was improperly advised of the consequences of a refusal to consent to the test, and therefore was unlawfully coerced into submitting to a breath test. As a result, he asserts that the result of his breath test should be suppressed.

¶16 Once again, this Court has specifically addressed Briggs' argument, and rejected it. In both *State v. Simmons*, 2000 MT 329, 303 Mont. 60, 15 P.3d 408, and *City of Missoula v. Fergunson*, 2001 MT 69, 305 Mont. 36, 22 P.3d 198, this Court concluded that Montana's advisory provided sufficiently accurate information to a person as to the ramifications of a refusal to submit to testing. We stated in *Simmons*, "The purpose of the Implied Consent Advisory is to inform an apparently intoxicated driver of the potentially serious

consequences of refusing to submit to a blood alcohol test and of his due process protections such as rights to independent testing and post-testing hearings." *Simmons*, ¶ 17. As in *Simmons*, the purpose of the advisory was accomplished here. The holdings in *Simmons* and *Fergunson* control this case. The District Court did not err in denying Briggs' motion to suppress.

¶17 Lastly, Briggs contends that even with the results of the breath test in evidence, there was still insufficient evidence upon which a rational trier of fact could find the elements of DUI beyond a reasonable doubt.

¶18 Under § 61-8-401(1)(a), MCA, it is unlawful for a person who is under the influence of alcohol to drive or be in actual physical control of a vehicle upon the ways of this state open to the public. Briggs asserts that testimony regarding the amount of alcohol he consumed that evening and his performance on the field sobriety tests should have led the court to conclude that reasonable doubt existed. In fact, the District Court did express skepticism that drinking approximately one-third of a bottle of wine, with dinner, and one and one-half beers after dinner would result in a .133 breathalyzer score. However, the court subsequently concluded, "beyond a reasonable doubt [that] there was more alcohol consumed than has been admitted to here in the testimony." The court based its conclusion upon the following evidence:

- the opinion of the arresting officer, who administered the field sobriety tests, that Briggs was intoxicated;

- testimony that Briggs smelled of alcohol and his eyes were bloodshot;

7

- both of Briggs' HGN tests resulted in scores of six out of six indicating intoxication;

- Briggs' breathalyzer result of .133; and

- shortly after leaving the bar, Briggs, while driving, had an automobile accident.

¶19 We conclude that this is ample evidence upon which a rational trier of fact could have

found the essential elements of DUI beyond a reasonable doubt.

## CONCLUSION

¶20 Accordingly, the judgment of the District Court is affirmed.


/S/ PATRICIA COTTER


We Concur:


/S/ JAMES C. NELSON
/S/ JIM REGNIER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE